552 A.2d 1335

**Alvin CUNNINGHAM**

v.

**STATE of Maryland.**

**No. 734, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Feb. 6, 1989.

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before BLOOM, KARWACKI and WENNER, JJ.

BLOOM, Judge.

A jury in the Circuit Court for Baltimore City, presided over by Judge Mary Arabian, convicted Alvin Cunningham of two counts of possession of a controlled dangerous substance with intent to distribute. One count alleged possession of cocaine, the other count alleged possession of heroin. He received two concurrent ten year sentences, five years of which were suspended in favor of probation. Appealing from those judgments, Cunningham contends:

I    The trial court erred in directing the jury to continue deliberating, in an effort to reach a verdict, after the jury reported being deadlocked.

II    The evidence was insufficient to sustain the convictions.

III  Appellant was improperly convicted of two separate counts of possession and distribution of a controlled dangerous substance.

We find no merit in these contentions and we will affirm the judgments.

## Facts

On January 28, 1987, at approximately 8:00 p.m., Officers Osborne McCarter and Zania Ribold were seated in a parked, unmarked car near the intersection of Baltimore and North Hilton Streets, conducting undercover surveillance of three identically dressed young men standing on North Hilton Street approximately 25 to 30 feet away from the officers' car. The three appeared to be engaged in a joint effort drug-trafficking operation. The officers were on specific assignment in the surveillance area because of its designation by the police department as a "target area," that is, an area known for a high concentration of drug-related activity. Officer McCarter testified that "on four distinct transactions" he observed appellant receiving money from individuals who were then given a "small yellowish packet" or a "little white object" by one of appellant's two companions, Kevin Brooks and Clayborne Cameron. Officer McCarter also observed Brooks place a paper bag into the wheel well of a nearby Mustang automobile. The officers, with back-up units, moved in and arrested the three. The brown bag was recovered from the wheel well and contained five yellow plastic envelopes, fifteen white powder-filled capsules, and a candy wrapper containing two white tablets. Analysis of the items seized revealed that the plastic bags contained a total of 2.39 grams of heroin and the capsules a total of 2.28 grams of cocaine.[1] Officer McCarter, the officer who arrested appellant, testified that when he searched appellant incident to the arrest he recovered $102.00 in cash. Officer Ribold testified to essentially

---

1. The two white capsules found in the candy wrapper contained no controlled dangerous substance.

the same events as those related by Officer McCarter. At trial, appellant testified that he was in the area to stop at the local carry-out grocery on North Hilton Street and that the money found on him was the proceeds of his paycheck from work as a janitor.

## I

Whether the court erred in directing the jury to continue deliberating in an effort to reach a verdict, after the jury reported being deadlocked.

■ The jury retired to deliberate at 1:30 p.m. In the course of the afternoon, the court received three notes. In the first, the jury asked "where did [appellant] get the $102 that was found on him?" [2] The second was to notify the court that people were listening outside the jury room door; and the third stated that "we have a hung jury."

The court informed counsel for both sides that she would not dismiss the jury as yet and solicited suggestions from each as to how long the jury would be held to deliberate that evening:

THE COURT: Come up, counsel. Do you want to go until 5:00? Whatever you wish.

[DEFENSE COUNSEL]: It is best perhaps that they receive a note that we are not going to keep them later, but you can go back and try to achieve.

THE COURT: And would you mind if I said it might be necessary to come back tomorrow?

[DEFENSE COUNSEL]: *I would ask for the rest of the day, and, judge, most respectfully, I will leave it up to your discretion and experience.* I would like to get a verdict to the best interest of my client, of course.

(Bench conference terminated.)

---

**2.** The court instructed the jury to rely upon their own memories regarding the evidence presented about the seized money.

**258**

THE COURT: Ladies and gentlemen, the court has received your note, and you state that you are a hung jury.

It is still early, and we have a short, a moderate time for deliberations.

The court would like to have you continue with your deliberations, and we don't want to rush you, and it won't be very late, because it may be another hour, and then, if you still feel that you are hung, we may—we don't want to rush you even then—you can come back tomorrow and continue with your deliberations. But we will inquire into all of these matters, but at this time you will continue with your deliberations, and the court would appreciate it as will counsel.

You may retire to the jury room for your deliberations. (Emphasis added.)

At 4:55 p.m. the jury returned a verdict of guilty. It is the above remarks about which appellant complains, contending that the court's words amounted to an improper "Allen-type" charge,[3] and were therefore coercive. Appellant, however, raised no objection below to the court's remarks, and as we find no "plain error" in them material to appellant's rights, we have no occasion otherwise to consider this complaint. Md.Rule 8–131(a); *Couplin v. State*, 37 Md. App. 567, 578–79, 378 A.2d 197 (1977); *Hutchinson v. State*, 36 Md.App. 58, 65, 373 A.2d 50 (1977).

Moreover, during the court's initial instructions to the jury, the judge specifically stated, "Now if at some time you cannot reach a unanimous verdict, again you will simply write that you are a hung jury.... In all likelihood, the court will ask you to continue with your deliberations...."

---

3. The adjective comes from *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The Court of Appeals has held that the decision whether to have the jury continue its deliberations after a reported deadlock with or without an American Bar Association approved Allen-type charge, *see*, *Goodmuth v. State*, 302 Md. 613, 490 A.2d 682 (1985), is a matter within the sound discretion of the trial judge. *Mayfield v. State*, 302 Md. 624, 630, 490 A.2d 687 (1985).

Therefore, appellant had fair warning of the court's disposition regarding a deadlock and had ample time to prepare or voice an objection to the court's subsequent remarks of which he now complains.

## II

Whether the evidence was insufficient to sustain appellant's convictions.

■ Appellant contends that the evidence was insufficient to support his convictions for possession of controlled dangerous substances, in that he was neither in possession of nor exercising control over the seized narcotics. This sufficiency issue was not preserved for appeal; it was not particularized by appellant in his motions for judgment of acquittal at the end of the State's case-in-chief or at the close of all the evidence.[4] *See, Warfield v. State*, 76 Md.App. 141, 543 A.2d 885, *cert. granted*, 314 Md. 95, 548 A.2d 845 (1988).

In any event, the evidence was sufficient to support the conviction of possession with intent to distribute. We have heretofore summarized the substance of the evidence, and see no reason to repeat it. It will suffice to say that a rational trier of facts, viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that appellant was the "money man" to whom individuals paid money before receiving small envelopes containing illegal drugs from two men acting as suppliers, with all three participants wearing similar clothing (black pants, red ski caps, and Nike sneakers). "Our [Maryland] cases do not require actual possession of contraband; constructive possession will support a conviction [of possession]." *Troving-*

---

4. At the end of the State's case, appellant stated that "as per my request, I motion for judgment of acquittal to all counts called." The motion was denied and appellant presented evidence thereby withdrawing the motion. Md. Rule 4–324(c). At the end of all the evidence, appellant told the court "I renew my motion for judgment of acquittal without any argument whatsoever."

*er v. State,* 34 Md.App. 357, 364, 367 A.2d 548 (1977). The jury could certainly draw a reasonable inference that appellant was participating in "the mutual use and enjoyment of the contraband." *Folk v. State,* 11 Md.App. 508, 518, 275 A.2d 184 (1971). *See also, State v. Leach,* 296 Md. 591, 595–96, 463 A.2d 872 (1983); *Henson v. State,* 236 Md. 518, 525, 204 A.2d 516 (1964); *Hill v. State,* 237 Md. 630, 206 A.2d 677 (1965); *Gipe v. State,* 55 Md.App. 604, 615–16, 466 A.2d 40 (1983); *Anderson v. State,* 9 Md.App. 639, 643–44, 267 A.2d 302 (1970); *Broadway v. State,* 3 Md.App. 164, 166, 237 A.2d 820 (1968). That being the standard of review for sufficiency of the evidence, *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), we reject appellant's second contention.

## III

Whether appellant was erroneously convicted of two separate criminal offenses.

█ Appellant, relying on *Mason v. State,* 302 Md. 434, 488 A.2d 955 (1985), contends that the separate charging counts and convictions of possession with intent to distribute cocaine and heroin constitute double punishment in contravention of the double jeopardy clause. He argues that the "unit of prosecution" under Md.Code art. 27, § 286(a)(1) (1987 Repl.Vol.) is possession, and that he therefore committed only one offense, possession of a controlled dangerous substance of which cocaine and heroin are inclusive.

Appellant's reliance on *Mason* is misplaced. In *Mason,* the defendant was charged with conspiracy to distribute controlled dangerous substance. The Court of Appeals ruled that where there is a single conspiracy, even if that conspiracy is one to commit multiple crimes, the conspiracy itself is but one offense. Therefore, the State could not create separate conspiracy charges for each controlled dangerous substance the accused conspired to distribute. *Mason* is inapposite to the case *sub judice,* in which appellant

is accused of possessing, with intent to distribute, two distinctly different controlled substances.

Neither this Court nor the Court of Appeals has heretofore addressed the precise issue here involved. Courts in several other jurisdictions have ruled on it, but with a singular lack of uniformity in either result or reasoning. There are, of course, some differences in the various statutes that prohibit the making, dispensing, and possession of controlled dangerous substances, and such statutory differences may furnish some explanation for the fact that in some jurisdictions the simultaneous possession of two different kinds of controlled substances would constitute two crimes whereas in other jurisdictions it would constitute but one offense.

Some courts concluded that simultaneous possession of two or more different drugs subjected the possessor to multiple prosecutions and conviction on the basis that under their governing statutes the drugs possessed by the defendants before them were listed in different schedules and would subject the defendant to different statutory penalties. *See, e.g., United States v. Grandison,* 783 F.2d 1152, 1156 (4th Cir.1986); *United States v. Pope,* 561 F.2d 663, 669 (6th Cir.1977); *State v. Zaccagnini,* 308 S.E.2d 131, 141 (W.Va.1983); *State v. Adams,* 364 A.2d 1237 (Del.Super. 1976); *State v. Williams,* 542 S.W.2d 3 (Mo.App.1976); *State v. Meadors,* 177 Mont. 100, 580 P.2d 903 (1978); *White v. State,* 568 P.2d 329 (Okl.Cr.1977).

On the other hand, those courts that have ruled that simultaneous possession of multiple kinds of drugs constitute a single offense have done so by applying the rule of lenity, although not necessarily referring to it as such. *See, State v. Rawls,* 198 Conn. 111, 502 A.2d 374, 379 (1985); *State v. Williams,* 12 Conn.App. 225, 530 A.2d 627, 630–31 (1987); *Braden v. United States,* 270 F. 441 (8th Cir.1920); *United States v. Martin,* 302 F.Supp. 498 (W.D.Pa.1969), *aff'd,* 428 F.2d 1140 (3rd Cir.1970), *cert. denied,* 400 U.S. 960, 91 S.Ct. 361, 27 L.Ed.2d 269 (1970); *People v. Man-*

*ning,* 71 Ill.2d 132, 15 Ill.Dec. 765, 374 N.E.2d 200 (1978); *State v. Butler,* 112 N.J.Super. 305, 271 A.2d 17 (1970).

Some courts have affirmed multiple convictions and sentences for simultaneous possession of different drugs that fall within different schedules but carry the same penalty (as in the case *sub judice* ), based upon their perceptions of legislative intent. In those jurisdictions, as in Maryland, the applicable statutes classified controlled dangerous substances into different "schedules" based upon the relative potential of each substance for abuse, the degree of physical or psychological dependence its use might engender, and its acceptability for medical use in treatment. *See, Melby v. State,* 70 Wis.2d 368, 234 N.W.2d 634 (1975); *State v. Collier,* 567 S.W.2d 165 (Tenn.1978); *State v. Campbell,* 549 S.W.2d 952 (Tenn.1977); *United States v. Davis,* 656 F.2d 153 (5th Cir.1981); *Murray v. State,* 464 So.2d 622 (Fla.Dist.App.1985); *Awad v. State,* 364 So.2d 516 (Fla.Dist. App.1978); *Scott v. State,* 358 So.2d 266 (Fla.Dist.App. 1978). The Wisconsin and Tennessee courts based their holdings largely upon the fact that their respective legislatures had classified drugs into various schedules depending upon each drug's relative potential for abuse, degree of dependency engendered, and acceptability for legitimate medical use, concluding that such classification indicated a legislative intent to regard each type of drug as presenting a separate and distinct type of problem. The drug, therefore, not the possession, was the intended unit of prosecution. In *United States v. Davis,* however, the Fifth Circuit Court of Appeals expressly rejected the reasoning of the Sixth Circuit Court of Appeals in *United States v. Pope, supra,* basing its affirmance of multiple convictions on a conclusion that in adopting the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841, Congress intended to give the courts broad discretionary sentencing powers. The Florida cases do not provide any analysis; each of them, without discussion, merely affirmed multiple convictions for simultaneous possession of multiple drugs.

We find the reasoning of the Wisconsin and Tennessee cases to be persuasive. That the Legislature meant that one in possession of more than one kind of controlled dangerous substance could properly be subject to separate prosecutions is inferable from the fact that such substances are classified into five separate schedules and several categories within schedules. Md.Code Ann., art. 27, § 279. With respect to heroin and cocaine, the two substances involved in this case, § 279 places heroin under Schedule I(b) because of its "[1] high potential for abuse; [2] no accepted medicinal use in the United States; and [3] a lack of accepted safety for use under medical supervision." Cocaine, however (a derivative of coca leaves), is a Schedule II(b) substance, having "[1] a high potential of abuse; [2] currently accepted medicinal use in the United States, or currently accepted medicinal use with severe restrictions; and [3] severe psychic or physical dependence [associated with abuse]." Although both drugs have high potential for abuse, the fact that each is found under a different schedule, cocaine having a currently acceptable medicinal use while heroin is not recognized as having any legitimate use, clearly indicates that the Legislature does not regard them as equal for purposes of prosecution. The penalty for possession of cocaine with intent to distribute it is the same as the penalty for possession of heroin with intent to distribute, because both substances are classified as narcotics, *see* Md.Code Ann. art. 27, §§ 277(q) and 286(b)(1). Nevertheless, § 286(b) prescribes three different degrees of penalty for possession with intent to distribute various types of controlled dangerous substance. The fact that the Legislature elected to separate the large number of controlled dangerous substances into various categories depending upon their potential for good or evil and then to treat them differently for purpose of punishment indicates to us that the legislative intent was to make the type of substance possessed, rather than the act of possessing, the "unit of prosecution." By possessing two different kinds of controlled dangerous substances, falling within different

**264**

statutory categories, appellant subjected himself to prosecution, conviction, and punishment for two separate offenses.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.