567 A.2d 126

Alvin CUNNINGHAM

v.

STATE of Maryland.

No. 29, Sept. Term, 1989.

Court of Appeals of Maryland.

Dec. 26, 1989.

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender, Victoria S. Keating, Asst. Public Defender, all on brief), Baltimore, for petitioner.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

McAULIFFE, Judge.

On 28 January 1987, Alvin Cunningham simultaneously possessed, in a single bag, separate quantities of heroin and cocaine.[1] The surrounding circumstances were sufficient to support a finding that Cunningham possessed these controlled dangerous substances with the intent to distribute them. The question presented here is whether Cunningham may be convicted and sentenced for two offenses under Maryland Code (1957, 1987 Repl.Vol.) Art. 27, § 286(a)(1). The resolution of this question depends upon the unit of prosecution intended by the General Assembly.

Cunningham was prosecuted on an information filed in the Circuit Court for Baltimore City. He was convicted on the first and third counts. The first count charged that Cunningham:

unlawfully did possess a certain controlled dangerous substance of schedule # 1, to wit: Heroin, which is a narcotic drug, in sufficient quantity to reasonably indicate under all the circumstances an intent to ... distribute such controlled dangerous substance [in violation of Art. 27, § 286].

The third count utilized the same language, except that the substance was identified as cocaine instead of heroin, and the schedule was identified as # 2 instead of # 1.

The trial judge imposed identical and concurrent sentences for the two convictions, and Cunningham appealed. The Court of Special Appeals affirmed, finding that "the legislative intent was to make the type of substance possessed, rather than the act of possessing, the 'unit of prosecution.'" *Cunningham v. State,* 78 Md.App. 254,

---

1. The facts of Cunningham's joint constructive possession of the bag and its contents are set forth in the opinion of the Court of Special Appeals, *Cunningham v. State,* 78 Md.App. 254, 256–57, 552 A.2d 1335 (1989).

163, 552 A.2d 1335 (1989). We granted certiorari, and we now affirm.

Cunningham argues that the General Assembly did not intend that two separate convictions could be obtained by proving that a defendant simultaneously possessed two different controlled dangerous substances. At the very least, he suggests, the language of the statute renders the intent of the legislature uncertain, and therefore the rule of lenity should operate to resolve the ambiguity in his favor.

We most recently discussed the principles that govern the resolution of this case in *Randall Book Corp. v. State*, 316 Md. 315, 558 A.2d 715 (1989), *Webb v. State*, 311 Md. 610, 536 A.2d 1161 (1988), and *Brown v. State*, 311 Md. 426, 535 A.2d 485 (1988). In *Randall Book*, 316 Md. at 324, 558 A.2d 715, we said:

The multiple sentence-single statute problems, with which we are concerned here, embrace a wide range of factual situations and statutory provisions. The key, of course, is legislative intent. As helpful as the various rules of statutory construction may be in determining legislative intent, perhaps the soundest guidance comes from the Supreme Court's admonition that we give the language of a statute a "commonsensical meaning." *United States v. Universal Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952).

▮▮▮ In attempting to determine legislative intent, we look first to the words of the statute, read in light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 514–15, 525 A.2d 628 (1987). In a case such as this, we consider "the general history and prevailing mood of the legislative body with respect to the type of criminal conduct involved." *Randall Book, supra*, 316 Md. at 327, 558 A.2d 715. The rule of lenity may or may not be an operative factor in determining legislative intent.

When the legislative intent can be gathered from the various sources to which we have referred, that intent

will be enforced, and the concept of lenity does not become an operable factor. If, however, the legislative intent cannot be determined, and the indicia point with equal force in opposite directions, the rule of lenity dictates that the matter be resolved in favor of the accused and against the possibility of multiple punishments.

*Id. See also Brown v. State, supra,* 311 Md. at 436 n. 8, 535 A.2d 485.

■ As Judge Eldridge pointed out for the Court in *Dawkins v. State,* 313 Md. 638, 645–46, 547 A.2d 1041 (1988), the Maryland Controlled Dangerous Substances Act is modeled on the Uniform Controlled Dangerous Substances Act. *See* 9 U.L.A. 187 (1979). In adopting the Maryland Act, the legislature noted that many of the substances included in the coverage of the Act have a legitimate and useful medical purpose and are necessary to maintain the health and general welfare of the people of the State. The legislature further declared, on the other hand, that:

> The General Assembly, however, finds and declares that the illegal manufacture, distribution, possession, and administration of controlled dangerous substances have a substantial and detrimental effect on the health and general welfare of the people of the State of Maryland. It is the purpose of this subheading to establish a uniform law controlling the manufacture, distribution, possession, and administration of controlled dangerous substances and related paraphernalia in order to insure their availability for legitimate medical and scientific purposes, but to prevent their abuse which results in a serious health problem to the individual and represents a serious danger to the welfare of the people of the State of Maryland.
>
> The provisions of this subheading shall be liberally interpreted and construed so as to effectuate its general purpose as stated hereinabove.

Article 27, § 276.

The Act establishes five separate schedules of controlled dangerous substances, grouping them generally with refer-

ence to: 1) the potential for abuse, 2) the level of accepted medical use, 3) the degree of safety for use under medical supervision, and 4) the severity of the potential danger of abuse, including physical or psychological dependence. Section 286(a)(1), with which we are particularly concerned in this case, provides in pertinent part:

> Except as authorized by this [Act], it is unlawful for any person ... to possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to ... distribute ... a controlled dangerous substance....

The basic penalty provision for this section, found in subsection (b), provide:

> Any person who violates any of the provisions of subsection (a) with respect to:

> (1) A substance classified in Schedules I or II which is a narcotic drug is guilty of felony and is subject to imprisonment for not more than 20 years, or a fine of not more than $25,000, or both....

> (2) Phencyclidine, [and other closely related controlled dangerous substances], is guilty of a felony and is subject to imprisonment for not more than 20 years, or a fine of not more than $20,000, or both....

> (3) Any other controlled dangerous substance classified in Schedule I, II, III, IV or V shall, upon conviction, be deemed guilty of a felony and sentenced to a term of imprisonment for not more than 5 years or a fine of not more than $15,000, or both....

Section 277(f) defines what is meant by a controlled dangerous substance:

> "Controlled dangerous substance" means *any* drug, substance or immediate precursor in Schedules I through V of this subheading.... (emphasis supplied).

Section 287, dealing with simple possession, has a similar framework. Section 287(a) provides:

> Except as authorized by this subheading, it is unlawful for any person ... [t]o possess or administer to another

any controlled dangerous substance, unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice.

Any violation of this section is a misdemeanor. The penalty prescribed is imprisonment not to exceed one year and a fine not to exceed $1,000, or both, if the substance involved is marihuana. If any other substance is involved, the penalty is imprisonment for not more than four years and a fine of not more than $25,000, or both. Article 27, § 287(e).

We read §§ 286 and 287 of the Act to authorize a separate conviction and punishment for the possession with intent to distribute, or possession, as the case may be, of each controlled dangerous substance covered by the Act, even when there is a simultaneous possession of more than one such substance.[2] Section 286 proscribes the possession (with the requisite intent) of "a controlled dangerous substance." Section 287 proscribes the possession of "any controlled dangerous substance." The article "a" and the word "any" have the same meaning in this context. In the definition section, "controlled dangerous substance" means "any" drug, substance, or immediate precursor in Schedules I through V. Article 27, § 277(f). We perceive this language to be deliberate, and to demonstrate the intention of the legislature to regulate each controlled dangerous substance, and to authorize a separate conviction for the possession of each substance. *See Brown v. State, supra,* 311 Md. at 435–36, 535 A.2d 485, where we discussed a similar choice of language in determining that the legislature intended to punish the single use of a handgun separately as to each victim involved. *See also Tabb v. State,* 250 Ga.

---

**2.** We do not here decide whether a defendant may be given separate sentences for controlled dangerous substances that have been mechanically or chemically combined in such manner that at the time of possession it is not possible, in any practical sense, to separate them. That issue is before us in *State v. Owens,* No. 56, September Term, 1988, which involves marihuana that had been sprayed with phencyclidine (PCP).

317, 297 S.E.2d 227, 230 (1982); *State v. Meadors*, 177 Mont. 100, 580 P.2d 903, 907 (1978); *State v. Collier*, 567 S.W.2d 165, 166–68 (Tenn.1978); *State v. Williams*, 542 S.W.2d 3, 5–6 (Mo.App.1976).

Moreover, we believe the prevailing mood of the Maryland General Assembly with respect to illegal drug activity is identical with that earlier attributed to Congress by the Supreme Court.

> [T]he history of the narcotics legislation in this country "reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter."

*Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981), quoting in part from *Gore v. United States*, 357 U.S. 386, 390, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958).

We have found nothing in the legislative history of the Maryland Act, or in the history of the Uniform Act, that indicates a contrary intent. Nor are we persuaded to reach a different result by our review of a substantial number of cases from other jurisdictions that address this issue. Indeed, the better reasoned of those cases, and the majority of them, reach the result we reach today.

Cases from other states, interpreting statutes largely modeled after the Uniform Act, fall into three categories: 1) those that find no intent to permit separate punishments for the simultaneous possession of more than one controlled dangerous substance; 2) those that find an intent to permit separate punishments based upon a grouping of controlled dangerous substances by schedule, or by differentiated punishment; and 3) those finding, as we do, that the unit of prosecution was intended to be each controlled dangerous substance.

Cases in the first category, holding against separate convictions for simultaneous possession of controlled dangerous substances, include: *State v. Rawls*, 198 Conn. 111, 502 A.2d 374 (1985) (utilizing rule of lenity to prohibit

convictions for simultaneous possession of cocaine and heroin); *People v. Manning,* 71 Ill.2d 132, 15 Ill.Dec. 765, 374 N.E.2d 200 (1978) (simultaneous possession of more than one type of controlled substance constitutes single offense); *Vogel v. State,* 426 So.2d 863 (Ala.Cr.App.1980), *aff'd,* 426 So.2d 882 (Ala.1982), *cert. denied,* 462 U.S. 1107, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983) (statute prohibiting possession "of controlled substances" envisions but one conviction for single possession of several drugs); *Martin v. State,* 176 Ind.App. 99, 374 N.E.2d 543 (1978) (same).

In a second category of cases, courts have reasoned that by the establishment of separate schedules, or separate categories of treatment for purposes of punishment, the legislature intended to systematically divide the permissible offenses. *See, e.g., Ohio v. Delfino,* 22 Ohio St.3d 270, 490 N.E.2d 884 (1986) (legislature intended the possession of the different drug groups to constitute different offenses); *Gonzales v. State,* 706 S.W.2d 764 (Tex.App.1986) (possession of marihuana and possession of LSD, although both violations of the same statute, are nevertheless separate offenses, with different grades of punishment).

The third category of cases, comprising the courts that hold there may be separate convictions and punishment for simultaneous possession of two or more dangerous substances, include the following: *In re Hayes,* 70 Cal.2d 604, 75 Cal.Rptr. 790, 451 P.2d 430 (1969) (discussing, in dictum, prior cases holding multiple punishment for simultaneous possession of narcotic drugs nor precluded); *but cf. In re Adams,* 14 Cal.3d 629, 122 Cal.Rptr. 73, 536 P.2d 473 (1975) (multiple punishment rule invoked in drug possession cases has no application where defendant possesses the drugs for the purpose of accomplishing only a single criminal objective); *Tabb v. State,* 250 Ga. 317, 297 S.E.2d 227 (1982) (simultaneous possession of each of the controlled substances listed in a single schedule is a separate offense for which the legislature meant to impose punishment); *State v. Meadors,* 177 Mont. 100, 580 P.2d 903 (1978) (legislature did not intend to treat all prohibited drugs as a generic drug

or unit, but meant to provide a distinct crime for possessing each different type of prohibited drug); *State v. Collier*, 567 S.W.2d 165 (Tenn.1978) (possession with intent to sell two or more controlled substances classified within the same schedule of the Act constitutes separate and distinct offenses); *Melby v. State*, 70 Wis.2d 368, 234 N.W.2d 634 (1975) (simultaneous possession of three dangerous drugs supports three convictions and sentences); *State v. Williams*, 542 S.W.2d 3 (Mo.App.1976) (simultaneous possession of heroin and marihuana, both Schedule I controlled substances, justifies two convictions and sentences); *State v. Horton*, 75 N.C.App. 632, 331 S.E.2d 215 (1985) (simultaneous possession of cocaine and heroin justifies separate convictions and punishment); *Boque v. State*, 556 P.2d 272 (Okla.Crim.1976) (dictum—possession of two different drugs would constitute two separate offenses); *State v. Ness*, 54 Or.App. 530, 635 P.2d 1025 (1981) (separate convictions for simultaneous possession of separate controlled substances would be permitted, but marihuana, hashish and hashish oil are all classified as the single substance of marihuana under Oregon law); *State v. Adams*, 364 A.2d 1237 (Del.Super.Ct.1976) (legislature intended to apply the statutory prohibition to individual substances, thereby creating a separate crime with respect to each forbidden substance).

In the case *In re Hayes, supra,* the Supreme Court of California wrestled with the problem of whether separate convictions for driving with a suspended license and driving while under the influence of intoxicating liquor were contrary to a statute prohibiting multiple punishments for a single criminal act or omission. Justice Mosk, writing for the majority, analogized the single act of driving to the single act of possession of various narcotic drugs, and pointed out that separate convictions for the latter conduct had long been approved by the California courts. The court said:

> Moreover, we must not confuse simultaneity with identity: in both of the above situations—driving as in this case and possession of contraband in the cited cases—the

defendant committed two simultaneous *criminal* acts, which coincidentally had in common an identical noncriminal act. The two simultaneous criminal acts of possessing substance X and possessing substance Y share the common, "neutral" act of possessing, just as they necessarily share the common factor of lack of a valid prescription for the drugs. Likewise, the two simultaneous—but distinct—criminal acts of driving with a suspended license and driving while intoxicated share the common, noncriminal act of driving.

*In re Hayes, supra,* 451 P.2d at 432. Chief Justice Traynor, writing for the dissenting justices, sought to distinguish the act of driving from the act of possessing, but agreed that possession of two different items of contraband properly constituted two offenses.

[T]he possession of one item is not essential to the possession of another separate item. One does not possess in the abstract; possession is meaningless unless something is possessed. The possession of each separate item is therefore a separate act of possession.

*Id.* at 436.

Federal decisions interpreting the Comprehensive Drug Abuse Prevention and Control Act of 1970 (Pub.L. 91–513) are also instructive. In *United States v. Grandison,* 783 F.2d 1152 (4th Cir.1986), the court was asked to determine the allowable unit of prosecution under 21 U.S.C. 841(a)(1), which makes it a crime for "any person knowingly or intentionally to possess with intent to distribute a controlled substance." *Grandison* was charged with simultaneous possession of heroin, a Schedule I substance, and cocaine, a Schedule II substance. The Court held:

Because different penalties are provided for possession with intent to distribute drugs listed in different schedules, we hold that Congress intended the possession of each scheduled substance to be a separate offense and to permit trial courts to impose separate sentences for each offense.

*Id.* at 1156. The United States Court of Appeals for the Sixth Circuit reached the identical result in *United States v. Pope,* 561 F.2d 663 (6th Cir.1977).

Proceeding a step further, and following a review of the legislative history of the federal Act, the United States Court of Appeals for the Fifth Circuit held that:

Congress intended, in enacting 21 U.S.C. § 841, to provide trial judges with maximum flexibility in sentencing, and therefore intended to permit separate punishment for possession of each controlled substance. Simultaneous possession of marijuana and of quaaludes constitutes two acts which violate one statute, and consecutive sentencing is appropriate.

*United States v. Davis,* 656 F.2d 153, 160 (5th Cir.1981).

Earlier federal cases, interpreting different statutes and reaching a different result, include *Parmaqini v. United States,* 42 F.2d 721 (9th Cir.1930) and *United States v. Martin,* 302 F.Supp. 498 (W.D.Pa.1969).

■ The two controlled substances possessed by the defendant in the present case were heroin and cocaine. As we have noted, heroin is a Schedule I drug, and cocaine is a Schedule II drug. Accordingly, whether we determine that the legislature intended to create separate units of prosecution for each schedule of drugs established by the Act, or take the broader view that the legislature intended to make each controlled dangerous substance an allowable unit of prosecution, the result would be the same in Cunningham's case. We decline to accept the argument that the legislature intended to establish units of prosecution based upon the schedules, or the scheme of punishment. Had the legislature tied the scheme of punishments directly to the five schedules, we might have found that argument to have more force. It did not do so. The scheme of punishment is closely related to the identification of the particular drug involved as well as, in some cases, to the quantity of the drug involved. We find the reasoning of the Fifth Circuit persuasive on this issue. *United States v. Davis, supra,*

656 F.2d at 159–60. In *State v. Collier, supra,* and *State v. Williams, supra,* the Supreme Court of Tennessee and the Missouri Court of Appeals also expanded earlier holdings in those states linking the unit of prosecution to schedules or punishment, and found that the legislative intent was to permit punishment for each controlled substance.

We hold that Cunningham was properly given separate sentences for the simultaneous possession of two controlled dangerous substances.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.