511 A.2d 1108

**In re DARYL L.**

**No. 1600, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

July 14, 1986.

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Stephanie J. Lane, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Glascoe Baker, Asst. State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Submitted before WEANT, ADKINS, and ROSALYN B. BELL, JJ.

WEANT, Judge.

The Circuit Court for Baltimore City overruled appellant Daryl L.'s exception challenging a juvenile master's finding that appellant committed a delinquent act by carrying a concealed dangerous and deadly weapon in violation of Md.Code Ann. art. 27, § 36(a). This appeal followed, with the request that we answer a solitary question: "Does a folding knife without switchblade but with a locking device for the protection of the user fall within the exception for 'penknife without switchblade' in Article 27, § 36(a)?" Our affirmative response mandates reversal of the circuit court's judgment.

### *Article 27, section 36(a)*

Md.Code Ann. art. 27, § 36(a) makes it a misdemeanor for person to "wear or carry any dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person...."

 

### Master's Finding

The following is an excerpt from the master's disposition memorandum to the juvenile judge.

The facts showed police officers saw Darryl [*sic*] [L.] and five companions, and approached to determine if the daytime curfew was being violated. Four of the group ran, and one of the two who were caught was Darryl [*sic*]. The officer conducted a patdown, and from Darryl's [*sic*] right front pocket removed a knife. The knife was brought to Court. Its total length is 8½ inches. The blade is 3¾ inches long, while the handle is 4¾ inches long. The blade is between ¾ and 1 inch wide and tapers to a narrow point. The blade folds into the handle, being partially concealed by it. When open, the blade locks into place and cannot be folded down without the purposeful depression of a mechanism on the bottom opposing side of the handle.

 \* \* \* \* \* \*

The Court ruled this knife was not in fact a penknife. The Court's ruling is based on the knifes [*sic*] structural capability for "offensive or defensive infliction of bodily injury". The Court found the locking mechanism, size, and general characteristics of this knife precluded it being categorized as a penknife.

### Mackall v. State

*Mackall v. State*, 283 Md. 100, 387 A.2d 762 (1978), makes clear that the State bears the burden of showing that the knife carried by appellant was "not a penknife without switchblade in order to prove the corpus delecti of the crime charged." *Id.* at 111, 387 A.2d at 768. *Mackall* also instructs that "[p]enknives today are commonly considered to encompass *any knife with the blade folding into the handle, some very large.*" *Id.* at 113 n. 13, 387 A.2d at 769 n. 13 (emphasis added).

## Conclusion

In an effort to satisfy its burden, the State, at every stage of the proceedings in the case *sub judice*, has argued that the knife's locking mechanism places the knife within the ambit of § 36(a) and outside the ambit of § 36(a)'s exception for penknives. As support for its argument, the State cites *Savoy v. State*, 236 Md. 36, 202 A.2d 324 (1964), wherein the Court of Appeals declined to disturb the jury's finding of a violation of § 36(a). The *Savoy* knife was a gravity knife, *i.e.*, "similar to a switch-blade knife, in that, when a button is pressed, the blade drops out." *Id.* at 39, 202 A.2d at 325. Although the knife would not open in the normal manner, the blade could lock into position with a flick of the wrist. *Id.*, 202 A.2d at 325–26. The State relies upon the latter characteristic of the *Savoy* knife to support its "locking mechanism" argument. We find the State's argument upersuasive.

Absent the operational defect of the knife in *Savoy*, the knife was closely akin to a switchblade; a switchblade is specifically covered by § 36(a). Absent the locking mechanism, the knife described by the master in the instant case clearly falls within the *Mackall* court's definition of a penknife; a penknife is (except in certain circumstances not found here) specifically excluded from the coverage of § 36(a). In our view, the locking mechanism of appellant's knife, described by both appellant and the knife's manufacturer (Buck Knives, Inc.) as a protective feature, does not cause the knife in question be other than a penknife. It lacks the additional offensive qualities of a switchblade or a gravity knife which make those instruments instantly available for any violent design at the command of the user. The lockback knife exacts the same time and motion for opening as is required for any other penknife.

JUDGMENT REVERSED.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.