569 A.2d 693

**FRANKLIN SQUARE HOSPITAL**

v.

**Timothy LAUBACH, et al.**

**No. 86, Sept. Term, 1989.**

Court of Appeals of Maryland.

Feb. 14, 1990.

Lawrence S. Greenwald (Eugene M. Feinblatt, Anastasia Watson Smith, and Karen M. Crabtree, all on brief), Baltimore, for petitioner.

Patrick A. O'Doherty, Baltimore, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and CHARLES E. ORTH, Jr. (Judge retired, specially assigned).

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

Maryland Code (1982), § 4–302(b)(1) of the Health–General Article (HG)[1] commands:

(1) Except as otherwise provided in this subsection,[2] a facility shall comply within a reasonable time after a person in interest requests, in writing:

(i) To receive a copy of a medical record; or

(ii) To see and copy the medical record.

Section 4–302(d)(2) speaks to the liability on a violation of § 4–302(b)(1). It declares:

If a facility refuses to disclose a medical record within a reasonable time after a person in interest requests the disclosure, the facility is, in addition to any liability for actual damages, liable for punitive damages.

Timothy Laubach and Nancy Laubach, his wife, instituted an action in the Circuit Court for Baltimore City against Franklin Square Hospital and others. The action involved the medical treatment of the pregnant Mrs. Laubach, the death of her brain damaged daughter, and the disclosure of "fetal heart monitoring tracings." The complaint alleged that the Hospital had violated the dictates of § 4–302(b)(1) and prayed for compensatory and punitive damages pursuant to § 4–302(d)(2). The jury found for the Laubachs and against the Hospital. It awarded actual damages in the amount of $300,000 and punitive damages in the amount of $700,000. Judgment was entered for $1,000,000 and costs. The Laubachs, anticipating an appeal by the Hospital, filed

---

1. Hereinafter in this opinion, unless otherwise indicated, references to sections, subsections and paragraphs are to the Health–General Article of the Md.Code. Sections 1–101 to 12–116 were in the 1982 volume. A replacement volume covering sections 13–101 to the end was published in 1987. Two replacement volumes covering all the sections and their cumulative supplements were published in 1990.

2. The exceptions are set out in Md.Code (1982), § 4–302(b)(2) and (3) of the Health–General Article. They are with respect to medical records relating to a psychiatric or psychological problem and to a medical record kept on a minor which relates to diagnosis or treatment of a venereal disease or to use of a drug.

a "protective appeal." The Hospital, aggrieved by the verdict in favor of the Laubachs, filed a cross-appeal. The Court of Special Appeals affirmed the judgments entered in the trial court. *Laubach v. Franklin Square Hospital*, 79 Md.App. 203, 556 A.2d 682 (1989). We granted the Hospital's petition for the issuance of a writ of certiorari. In our order to the Court of Special Appeals, however, we culled from the questions presented by the Hospital only one question. We ordered that a writ of certiorari "shall issue limited solely to a review of the following question":

> Whether malice is a prerequisite to recovery of punitive damages under Md.Health–Gen.Code Ann. ("HG") § 4–302.[3]

The manner in which the Hospital phrased the question, accepted by us for review, especially when considered with our refusal to review the other questions presented by the Hospital and our denial of the Laubachs' cross-petition, makes perfectly clear that, in the contemplation of § 4–302, it is not in dispute before us, that

1) the Hospital is a "facility," *see* § 4–302(a)(2) and § 19–301;

2) the Laubachs were "persons in interest," *see* § 4–302(a)(4)(i);

3) "fetal heart monitoring tracings" constitute a "medical record," *see* § 4–302(a)(3)(i) and (ii);

4) the Laubachs duly requested the disclosure of the medical record;

5) the Hospital failed to disclose the medical record within a reasonable time;

6) the award of actual damages was proper;

---

3. We refused to review two other questions presented in the petition for certiorari:

Whether damages for emotional distress may be recovered under HG § 4–302, and, if so, under what circumstances.

Whether, within the meaning of HG § 4–302, [Franklin Square] Hospital "refused" to disclose "a medical record" within a reasonable time.

We denied a conditional cross-petition filed by the Laubachs.

all as was thrashed out and determined in the trial court and the Court of Special Appeals. With the determination of these issues as a given, the only issue left hanging for resolution of the question before us is the narrow one of the need to prove malice to sustain an award of punitive damages. This is a matter of law. The issue arises from the failure of the trial judge, over exception by the Hospital, to instruct the jury "concerning [the] requirement of actual malice or at the very least implied malice" in regard to punitive damages.

Once again we go hunting the ghost of legislative intent. *See* Miller & Levinson, *Ghost Hunting: Searching for Maryland Legislative History*, 22 Md. Bar J. 11–16 (July–August 1989); M. Miller, *Ghost Hunting: Finding Legislative Intent in Maryland, A Check List of Sources* (October 1984) (unpublished manuscript available in the Maryland State Law Library). In our endeavor to lay this specter to rest, "the purpose [of the statute], determined in light of the statute's context, is the key." *Kaczorowski v. City of Baltimore*, 309 Md. 505, 516, 525 A.2d 628 (1987). We look to the words used, the language of the statute. As Judge Adkins, speaking for the Court in *Kaczorowski,* said in his thorough analysis of our function in the interpretation of a statute:

> The aim or policy of the legislation, against which we measure the words used, is "not ... drawn out of the air; it is evinced in the language of the statute as read in the light of other external manifestations of that purpose."

309 Md. at 514, 525 A.2d 628 (quoting Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 538–539 (1947)). Judge Adkins quoted from *Watt v. Alaska*, 451 U.S. 259, 265–266, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981) (citations and footnote omitted):

> "We agree ... that '[t]he starting point in every case involving construction of a statute is the language itself.' But ascertainment of the meaning apparent on the face of a single statute need not end the inquiry. This is because the plain-meaning rule is 'rather an axiom of experience

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

than a rule of law, and does not preclude consideration of persuasive evidence if it exists.' "

*Kaczorowski* 309 Md. at 514, 525 A.2d 628.

[I]t is fair to say that legislation usually has some objective, goal, or purpose. It seeks to remedy some evil, to advance some interest, to attain some end.

*Id.* at 513, 525 A.2d 628.

▮▮▮▮ The Revisor's Note to § 4-302 explains:

This section is new language derived without substantive change from former Article 43, § 54M(a) through (f) and (h).

Subsection (b) of this section is revised to state the duties of facilities, as custodians of medical records, instead of the rights of persons in interest, for clarity.

Former Article 43, § 54M was the final product of 1981 House Bill 1287. The Governor's Information Practices Commission, in its Interim Report of January 1981, expressed concern about the disclosure of personal records. It observed:

Several examples will demonstrate the uneven and non-uniform character of legislation in this regard, particularly in the area of an individual's right to access to records involving personal facts of his life. Under Maryland law, this "person in interest" is permitted to have access to his personnel files, if he is a state employee, and to examine his educational records. However, no similar explicit access provisions are accorded to the "person in interest" if he is a patient in a Maryland state hospital or a client of a social service agency. This situation has led to considerable confusion regarding the legitimate rights of the "person in interest". For example, the Consumer Council of Maryland recently conducted a survey of eighteen public and private hospitals in the Baltimore metropolitan area and an additional sampling of county hospitals. The Consumer Council asked the following question: "Do patients in your hospital have access to their medical records?" The results demonstrated a clear absence of

uniform procedures in this area. Some hospitals indicated that a patient would never be granted access to such records. Others suggested that *medical records* would be released if the request came from an attorney. Still other hospitals maintained that the request would only be honored if disclosure was authorized by the attending physician. Finally, at least one hospital stated that patients are given access to their records. It is obvious that the findings of the Consumer Council demand further investigation of this issue. [footnotes omitted].

House Bill 1287 spoke to the problem. The purpose statement of the Bill read:

For the purpose of requiring disclosure of a medical record maintained by a hospital or related institution to the person about whom the record is maintained, subject to a limitation on psychiatric information; permitting disclosure of the medical record to certain other designated persons; providing a right to and process for correcting or supplementing the medical record maintained by a hospital or related institution; limiting liability for disclosure pursuant to requirements of the Act; *providing certain penalties;* providing that the provisions of this Act are supplemental to provisions relating to the disclosure of medical records generally; and generally relating to the disclosure of medical records maintained by a hospital or related institution. [emphasis added].

The Fiscal Note that accompanied the Bill states in its "Summary of Legislation" that "if records are denied a hospital may be penalized." An unsigned, undated, handwritten note included in the Legislative Committee Bill File reads:

The bill mandates disclosure of medical records to the patient (in the case of a minor, his parents). If the hospital or doctor doesn't want to disclose the request, the patient is entitled to a summary of the records in writing.

> If the record holder *unreasonably delays* access or review of records, it *may* be liable for punitive damages beyond any actual damages.
>
> The bill is similar to one which already passed the Senate. [emphasis added].

When the Bill was first introduced, it prescribed that punitive damages were "not to exceed $500." This limitation was later struck. The Legislative Reference Library contains no additional useful information.

The Bill as enacted and previously codified as Article 43, § 54M read:

> (h) *Punitive damages for denial of access to records; penalty for obtaining medical record information under false pretenses.*—(1) Regardless of any liability for actual damages, any hospital or related institution that denies a person in interest access to or review of that person's medical record beyond a reasonable period of time *shall be liable* for punitive damages. [second emphasis added].

The present language of the liability provisions is in accord with this. Section 4–302(d)(2) declares that if the facility does not disclose a medical record as required, it *"is* liable for punitive damages." (emphasis added). That is, the issue of punitive damages goes to the jury; whether to award those damages is within the jury's discretion. Nowhere in the language of the statute or in its available legislative history is there any indication that the Legislature intended to impress on the liability for punitive damages a requirement of proof of malice, actual or implied. The obvious purpose of the statute is to compel disclosure of medical records under the prescribed circumstances, and to attain uniformity by having all facilities bound by the same rules. To achieve these purposes, no more than a mere refusal to disclose within a reasonable time, upon proper request, whether done maliciously or not, results in liability for punitive damages in addition to actual damages. This is a case where the language of the statute is clearly consistent with its apparent purpose, and not productive of

any absurd result. In other words, when the plain language in which the law is couched is considered in the context of the legislative purpose, the legislative intent shines bright and clear. Judge David Ross, presiding at the trial, told the jury:

The issue that you are called upon to determine in this case is a narrow issue, statutory claim. What the statute says is that if a hospital refuses to disclose a medical record within a reasonable time after it has been requested by an interested party, it may be liable to the party requesting it for *actual damages and for punitive damages*.

So, the question is in this case did the [Hospital] refuse to disclose the fetal monitoring strips within a reasonable time. The burden of proof is upon the [Laubachs] to prove the affirmative of that question. The answer to the question is yes or no.

The judge discussed refusal:

Now, refusal within the meaning of this statute means an *affirmative denial or intention not to comply with the request.*

In order for there to be a refusal, there must be a deliberate, conscious decision not to disclose the record within a reasonable time.

\* \* \* \* \* \*

The only thing that we are concerned with here in this case is, in other words, was there a refusal. If there was, were there any damages and if there were what are those damages.

The judge explained:

As I said, the statute allows recovery if refusal is shown for actual damages and for punitive damages.

If you award actual damages, you may also award, but you are not required to, an additional amount for punitive damages. Punitive damages are awarded under the statute to punish hospitals and other facilities for or to punish a hospital or other facility which has refused to

disclose a medical record within a reasonable time after a person of interest has requested the disclosure and also to deter or discourage other hospitals or facilities from acting in a similar manner. In other words, punishment and deterrence are the underpinnings of the punitive damage aspect of the case.

There were no objections to the above instructions except with regard to the omission of an instruction on malice. As discussed, an instruction on malice was not required. Otherwise, we express no approval or disapproval with respect to the above instructions.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY FRANKLIN SQUARE HOSPITAL.