573 A.2d 114

**Gilbert Clayton BACON, Jr.**

v.

**STATE of Maryland.**

**No. 1325, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 9, 1990.

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Sarah E. Page, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before BISHOP, GARRITY and WENNER, JJ.

GARRITY, Judge.

This appeal arises from the appellant's conviction by jury trial in the Circuit Court for Prince George's County (Rea, J.) on the charge of carrying a weapon openly with the intent to injure. Two issues are presented for our review:

1) Whether the lower court erred in finding the appellant's weapon to be a dangerous and deadly weapon as defined in Article 27, § 36(a), thus supporting his conviction for carrying a weapon openly with intent to injure; and

2) Whether the evidence was sufficient to justify the appellant's conviction for carrying a dangerous weapon openly.

## FACTS

On December 21, 1988, at about 9:15 p.m., Diwann Tyer and Janine Gardner were standing at the window of a Texaco station near Ms. Tyer's apartment complex. Ms. Tyer was in the process of purchasing cigarettes. Ms. Tyer testified that the appellant was standing to her left and

appeared to be looking at her wallet as she prepared to pay for the cigarettes.[1] She demanded to know why he was looking in her wallet, at which point the appellant directed a stream of profanity at her, and an argument ensued.

Ms. Tyer testified that during the argument, the appellant pulled a pocketknife from his pocket and waved it in her face, threatening to cut her if she did not go home. Ms. Tyer did not recall seeing the appellant open the knife. She testified that Ms. Gardner, who was standing behind Ms. Tyer, put her arm around Ms. Tyer's waist and pulled her away from the scene.

Ms. Gardner corroborated Ms. Tyer's testimony.[2] The women left and met with Ms. Gardner's brother. Ms. Gardner relayed to him what had happened, and her brother then confronted the appellant. Ms. Gardner testified that upon confrontation the appellant pulled out the pocketknife, at which point her brother went to his car and retrieved a tire iron.

Ms. Gardner's brother, Tyrone Gardner, testified that his friends joined him, someone hit the appellant, and they chased after him as he ran toward a Roy Rogers where police officers were located in the parking lot.

Corporal Timothy Long of the Prince George's County Police Department testified that he told the appellant to drop the knife, which he characterized as a "buck knife." Corporal Long had to repeat the request twice before the appellant complied. The appellant was arrested at that point.

---

1. Ms. Tyer testified that she had been paid that day, and her wallet contained several bills. She testified that her wallet was open to the extent that one could see the money.

2. The appellant also had been charged with armed robbery. Ms. Gardner testified that she had been holding a $20 bill in her hand to purchase some candy. During the course of the argument, she testified that the bill was snatched from her hand. She did not specifically see the appellant take the money, but she did not believe the woman in line behind her had taken the money.

The knife was estimated to have a five-inch blade. Corporal Long described it as a buck knife, which is a folding knife with a locking blade. A photograph of the knife was admitted into evidence.

## I.

The appellant contends that the trial court erred in denying his motion for acquittal on the basis that the weapon in his possession was a penknife within the exception enunciated in Article 27, § 36(a). Before we address the merits of this argument, however, we are compelled to respond to the State's contention that this argument was not preserved below.

Pursuant to Maryland Rule 8–131(a), this court generally reviews only those issues which have been raised or decided in the trial court. Further, when a defendant moves for a judgment of acquittal, he is required to state with particularity all reasons why the motion should be granted. *See* Md.Rule 4–324(a); *State v. Lyles*, 308 Md. 129, 135, 517 A.2d 761 (1986). The State contends that, in his motion for acquittal, the appellant only addressed the applicability of Article 27, § 36(a) in the context of the *nolle prossed* charge of carrying a concealed weapon. The State maintains that the argument on the motion for acquittal focused on insufficiency of the evidence, and, accordingly, the issue of whether the weapon falls within the penknife exception was neither raised nor decided below. We disagree.

In denying the appellant's motion for judgment of acquittal, the court stated:

There is testimony, along with what Mr. Creech said, and I have to agree with Mr. Creech that what would be a perfectly legal knife, folded up knife in the pocket, can become a weapon carried openly with intent to harm, and that's about the circumstances, and it has to come about what the jury understands the circumstances to be, and I will deny the motion.

Clearly, the trial court contemplated the character of the weapon at issue in its determination to deny the appellant's motion. Although the court did not specifically state that it found the weapon not to fall within the statutory exception, one can reasonably infer from the court's statement that under certain circumstances, the weapon would be a "perfectly legal knife" and thus, fall within the exception. Accordingly, we hold that the issue was raised and decided below.

■ As to the merits of this issue, Article 27, § 36(a) states, in part:

> Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, nunchaku, or whatsoever (penknives without switchblades and handguns, excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon ... openly with the intent or purpose of injuring any person in any unlawful manner, shall be fined not more than $1,000 or be imprisoned in jail, . . . .

The appellant maintains that because his pocketknife had a fold-out blade that had to be locked manually into place, it must be characterized as a penknife without switchblade, and thus, fall within the statutory exception. We disagree.

The appellant relies on the case of *In re Daryl L.*, 68 Md.App. 375, 511 A.2d 1108 (1986), for the proposition that a folding knife without a switchblade but with a locking device is within the statutory exception. It is correct that such was our decision concerning the knife at issue in *In re Daryl L. Id.* at 378, 511 A.2d 1108. Other language in that decision, however, suggests that the factual circumstances of the case dictated our conclusion.

First, we noted that the Court of Appeals established, in *Mackall v. State*, 283 Md. 100, 111, 387 A.2d 762 (1978), that the State bears the burden of showing that the knife in question does not fall within the statutory exception. We noted, as well, that *Mackall* indicated that " '[p]enknives

today are commonly considered to encompass *any knife with the blade folding into the handle, some very large.'* "
*In re Daryl L.*, 68 Md.App. at 377, 511 A.2d 1108 (quoting *Mackall, supra*, 283 Md. at 113 n. 13, 387 A.2d 762.).

In concluding that the knife was a penknife within the statutory exception, we stated:

> In our view, the locking mechanism of appellant's knife ... does not cause the knife in question to be other than a penknife. It lacks the additional offensive qualities of a switchblade or a gravity knife which make those instruments instantly available for any violent design at the command of the user. The lockback knife exacts the same time and motion for opening as is required for any other penknife.

*In re Daryl L.*, 68 Md.App. at 378, 511 A.2d 1108.

Significantly, the knife in *In re Daryl L.* was extracted from the appellant's pocket during a pat down search, and there was no indication that the knife was in other than its folded, closed position. Accordingly, it was not "instantly available for any violent design at the command of the user." In the matter *sub judice*, however, the State established through witness testimony that the appellant pulled the knife from his pocket with the blade already open.[3] Thus, it did not require any time to open the knife, as one would with a penknife, and it contained all the offensive qualities of a switchblade or gravity knife because it was instantly available for violent use.

Accordingly, we hold that the trial court did not err in finding the knife to be outside the statutory exception. The circumstances of the appellant withdrawing what would otherwise qualify as a "penknife without switchblade" from his pocket with the blade in an open position served to take the knife out of the statutory exception. In that open state, it was no longer a penknife. At the point the appellant

---

3. Tyrone Gardner testified that when he confronted the appellant, the appellant "went in his pocket and removed a pocketknife which was open, the blade was out."

withdrew the knife, it carried all the dangerous propensities that the weapons listed in Art. 27, § 36(a) have in common.

## II.

Finally, the appellant argues that the evidence was insufficient to support his conviction. Specifically, the appellant argues that the State did not prove that the appellant carried the knife openly and that he carried it with an intent to injure. We disagree.

Our standard for review on grounds of insufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bloodsworth v. State,* 76 Md.App. 23, 27, 543 A.2d 382, *cert. denied,* 313 Md. 688, 548 A.2d 128 (1988). We hold that the record clearly contains sufficient evidence to meet that standard.

As for evidence that the weapon was carried openly, both Ms. Tyer and Ms. Gardner testified that once the weapon was withdrawn, the appellant waved it in Ms. Tyer's face for two or three minutes. Ms. Gardner's brother, Tyrone Gardner, also testified that the appellant pulled the knife on him. Corporal Long's testimony indicated that he observed the appellant walking with the knife out, and that, in fact, the appellant had to be advised twice to drop the knife before he complied. Accordingly, the evidence was sufficient to indicate that the appellant carried the weapon openly.

As to the appellant's intent to injure, testimony from Ms. Tyer revealed that the appellant threatened to cut her if she did not leave immediately. Detective Corbin, the investigating officer who met with the appellant when he was brought into the station following his arrest, testified that the appellant had stated that he would have cut Ms. Tyer. Further, Ms. Gardner testified that she pulled Ms. Tyer away from the appellant because she was afraid that the appellant was going to injure Ms. Tyer. This testimony

**744**

was sufficient to establish the appellant's intent to injure. Accordingly, the evidence supported the appellant's conviction, and we shall not disturb the ruling below.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.