586 A.2d 18

**Gilbert Clayton BACON, Jr.**

v.

**STATE of Maryland.**

**No. 80, Sept. Term, 1990.**

Court of Appeals of Maryland.

Feb. 26, 1991.

Michael R. Malloy, Asst. Public Defender, Stephen E. Harris, Public Defender, Baltimore, both on brief, for petitioner.

Diane E. Keller, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., Baltimore, both on brief, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., CHARLES E. ORTH, Jr. and MARVIN H. SMITH, Associate Judges of the Court of Appeals (retired), Specially Assigned, and A. OWEN HENNEGAN, Judge of the Third Judicial Circuit (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

Gilbert Clayton Bacon, Jr. claims that, in the particular circumstances of this case, it is against the law to punish him for "carry[ing] a dangerous weapon openly, to wit: knife, with the intent of injuring a person in an unlawful manner." He is right.

Bacon was convicted by a jury in the Circuit Court for Prince George's County of that charge. The Court of Special Appeals affirmed the judgment entered on the conviction. *Bacon v. State,* 82 Md.App. 737, 573 A.2d 114 (1990). We granted his petition for a writ of certiorari.

The charge was brought under Article 27, § 36(a) of the Maryland Code (1957, 1987 Repl.Vol.). It provides, in pertinent part:

> Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon, chemical mace or tear gas device openly with the intent or purpose of injuring any person in any unlawful manner, shall be guilty of a misdemeanor.... [1]

---

**1.** Maryland Code (1957, 1987 Repl.Vol.) Article 27, § 36(a) is part of a comprehensive scheme set out in the section to control the carrying of

Bacon does not now suggest that the evidence adduced was legally insufficient for the jury to find that he was in possession of a knife, that the knife was a deadly weapon, and that he was carrying it openly with the intent to injure a person in an unlawful manner. The challenge to his conviction goes only to the proof that the knife he was carrying was not a weapon excluded by the Legislature in creating the crime. His petition for certiorari presents one question:

> Does a penknife carried with its blade open fall outside the "penknives without switchblade" exception of Article 27, § 36(a)?

If the knife he so carried was within the exception, it follows that his conduct was not criminal in the contemplation of § 36(a), no matter how outrageous that conduct may have been.

# I

When the crime now proscribed by § 36(a) was created over a century ago by Acts 1886, ch. 375, only "penknives" were excepted. By Acts 1957, ch. 168, switchblade knife was added to the weapons specifically designated as deadly, and the penknives exception was qualified by the phrase "without switchblade." By Acts 1972, ch. 13 "pistol" was deleted from the weapons specifically designated as deadly, and "handguns" were added to the exception.[2]

# II

## A

■ The propriety of Bacon's conviction turns on the type of weapon which was the subject of the charge. At

---

a deadly weapon. *See Mackall v. State,* 283 Md. 100, 106–107, 387 A.2d 762 (1978), for an analysis of the entire § 36.

**2.** Acts 1972, ch. 13 enacted a comprehensive scheme for the control of handguns, now codified, as amended from time to time, in Maryland Code (1957, 1987 Repl.Vol., 1990 Cumm.Supp.) Article 27, § 36B through § 36J. This comprehensive scheme made it unnecessary to include a handgun as a dangerous and deadly weapon in § 36(a).

the trial, the knife recovered from Bacon was not introduced in evidence. It had been stored in the police property room, but when the police went to retrieve it for the trial it could not be found. A photograph of the knife was received in evidence, but the photograph is not included in the record transmitted to us. So, to ascertain the nature of the knife which is the basis of the charge, we must rely on such description of it that can be gleaned from the transcript of the testimony at the trial.

A private citizen, involved in the incident leading to Bacon's arrest, was called by the State. Asked to describe the knife, he said, "Full details, I cannot describe it. It had a silver blade. I could not see the rest of the knife, because he had his hand around it." The blade was "four, five, six inches [long]." Pressed by the court as to the length, he responded, "I would say five inches. It could have been more, it could have been less." The police officer who recovered the knife called it a "buck knife." The detective who placed the knife "into Property here in Upper Marlboro" said it was "a buck knife, that's a folding knife with a locking blade."

*In re Daryl L.*, 68 Md.App. 375, 511 A.2d 1108 (1986), concerned a buck knife. It appears that the term is applied to a knife manufactured by, or to a knife similar to one manufactured by, Buck Knives, Inc., well known in the armorer trade, named after its president Al Buck. The buck knife in *Daryl L.* had an overall length of 8½ inches, of which the blade was 3¾ inches long and the handle 4¾ inches in length. The blade was between ¾ and 1 inch wide and tapered to a narrow point. The blade folded into the handle, being partially concealed by it. When open, the blade locked into place and could not be folded down without the purposeful depression of a mechanism on the bottom opposing side of the handle. *Id.* at 377, 511 A.2d 1108. There was no dispute here that the knife recovered from Bacon was a "buck knife," more properly a "Buck knife." We assume, in the light of the description of the weapon, which appears in the transcript of the testimony, that the

knife recovered from Bacon was not unlike the knife in *Daryl L.*

## B

The question is whether a buck knife is a "penknife without switchblade." The Legislature did not define "penknife" or "switchblade knife." [3] In *Mackall v. State,* 283 Md. at 113, 387 A.2d 762, we quoted The American Heritage Dictionary of the English Language (1969) definition of a penknife as "a small pocketknife, originally used to make or sharpen quill pens." We noted, however,

> [e]ven if the General Assembly had the dictionary definition in mind when it first enacted the statute in 1886, this concept of a "penknife" had obviously changed when the exception was amended to "penknife without switchblade." Penknives today are commonly considered to encompass any knife with the blade folding into the handle, some very large.

283 Md. at 113, n. 13, 387 A.2d 762. *Webster's Third New International Dictionary of the English Language* (unabridged) (1981) states that a switchblade knife is "a pocketknife having the blade spring-operated so that pressure on a release catch causes it to fly open [from its position folded in the handle]." *Id.* at 2314. When open, the blade locks into place and cannot be folded down without the release of a catch on the side of the handle. *See* sketch in *Webster* illustrating the definition.[4]

---

**3.** Five types of knives are specifically named in the statute. Only one of them, "star knife," is defined. Subsection (b) of § 36 states:
> As used in this section a "star knife" is a device used as a throwing weapon, consisting of several sharp or pointed blades arrayed as radically disposed arms about a central disk.

"Nunchaku" is also defined. Subsection (c). None of the other specified weapons are defined. "Star knife" and "nunchaku" are esoteric devices, not likely to be within the ken of the average person.

**4.** In *Savoy v. State,* 236 Md. 36, 202 A.2d 324 (1964), the question was whether a "gravity knife" was one of the types of knives spelled out in § 36(a). A gravity knife was described "as being similar to a switchblade knife, in that, when a button is pressed, the blade drops out."

The trial judge in *In re Daryl L.*, 68 Md.App. 375, 511 A.2d 1108, ruled that the buck knife in that case was not a penknife. He based his ruling on the knife's structural capability for "offensive or defensive infliction of bodily injury." *Id.* at 377, 511 A.2d 1108. He "found the locking mechanism, size, and general characteristics of this knife precluded it being categorized as a penknife." *Id.* The Court of Special Appeals thought that the buck knife, absent the locking mechanism, fell within *Mackall's* definition of a penknife. It was the court's view that

> the locking mechanism of [the buck knife] described by both [Daryl L. and the manufacturer (Buck Knives, Inc.)] as a protective feature, [did] not cause the knife ... to be other than a penknife.

*Id.* at 378, 511 A.2d 1108. The court explained:

> It lacks the additional offensive qualities of a switchblade or a gravity knife which make those instruments instantly available for any violent design at the command of the user. The lockback knife exacts the same time and motion for opening as is required for any other penknife.

*Id.*[5] In any event, in the case before us, it is apparent from the State's argument that it is content that a buck knife qualifies as a penknife. Furthermore, in oral argument before us, the State conceded that the buck knife's blade-

---

*Id.* at 39, 202 A.2d 324. The gravity knife in that case "was not in good working order, but while it would not open in the normal manner, [by gravity,] the blade[, when opened,] could be locked into position, apparently with a flick of the wrist.... [T]here was no testimony that it was incapable of being used." *Id. Savoy* deemed that the question "more properly stated, [was] whether there was sufficient evidence from which the jury could find that the knife constituted a dangerous or deadly weapon." *Id.* The Court found that the question was properly submitted to the jury. The "penknife without switchblade" exception was not addressed.

5. In *State v. Bittinger*, 314 Md. 96, 549 A.2d 10 (1988), we had no need to address the question whether a buck knife was a penknife. The State's Attorney apparently agreed that the knife was a penknife without switchblade within the meaning of the exclusionary language of § 36(a), and we proceeded to decision on that assumption. *Id.* at 100, 549 A.2d 10.

locking device did not change its character as a penknife. And it is patent that a buck knife is "without switchblade." It follows, therefore, that a buck knife falls squarely within the exception of "penknives without switchblade."

## III

### A

The State first suggests that "the penknife exception is properly read to apply only to the offense of carrying a concealed weapon." This posture is bootless. It is firmly established that " 'the beginning point of statutory construction is the language of the statute itself.' " *In re Demetrius,* 321 Md. 468, 473, 583 A.2d 258 (1991), *quoting Morris v. Prince George's County,* 319 Md. 597, 603, 573 A.2d 1346 (1990). *See Franklin Square Hospital v. Laubach,* 318 Md. 615, 619–620, 569 A.2d 693 (1990); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–516, 525 A.2d 628 (1987). We noted in *Morris* at 603–604, 573 A.2d 1346, "[S]ometimes it may not be necessary to go further than the scrutiny of statutory language, for the language itself may be sufficiently expressive of the legislative purpose." This is one of those times. Section 36(a) is unambiguous; its language is clear. It prohibits the wearing or carrying of certain designated weapons concealed upon the person and excepts therefrom "penknives without switchblade and handguns." It then bans the wearing or carrying of "any *such* weapon" (and adds thereto "chemical mace or tear gas device") "openly with the intent or purpose of injuring any person in any unlawful manner...." (Emphasis added). We cannot read into this plain, unequivocal language the intention that the penknife exception applies when a designated weapon is concealed but not when it is worn or carried openly. This view is in complete accord with our analysis of subsection (a) of § 36 in *Mackall v. State,* 283 Md. 100, 106–107, 387 A.2d 762 (1978), and our statement and application of the subsection in *Washington v. State,* 293 Md. 465, 475, 445 A.2d 684 (1982). *Cf. State v. Bittinger,* 314 Md. 96, 99–100, 549 A.2d 10 (1988).

B

█ "Alternatively," the State opines:

even if the exception is held to apply to weapons carried openly, a knife that is capable of being folded but that is, in fact, carried with its blade locked open should not be deemed a "penknife" for the purposes of Section 36(a).

At the close of all the evidence (the defense did not offer evidence), Bacon moved for a judgment of acquittal. Md. Rule 4–324. We gather from the argument of counsel that both the prosecution and the defense were satisfied that the buck knife qualified as a penknife when the blade was folded into the handle. Their ways parted, however, upon the State's suggestion that when the blade was opened and locked, the knife lost its identity as a penknife and, therefore, its statutory exception. The trial court asked the prosecutor, "You are saying that the legal character of the knife can vary according to the circumstance?" The prosecutor said, "Yes." The trial judge accepted this notion:

I have to agree with [the prosecutor] that what would be a perfectly legal knife, folded up knife in the pocket, can become a weapon carried openly with intent to harm, and that's about the circumstances, and it has to come about what the jury understands the circumstances to be, and I will deny the motion.

The judge erred.

The Court of Special Appeals was seduced by the erroneous reasoning of the trial judge. It held that "the trial court did not err in finding the knife to be outside the statutory exception." The intermediate appellate court explained:

The circumstances of [Bacon's] withdrawing what would otherwise qualify as a "penknife without switchblade" from his pocket with the blade in an open position served to take the knife out of the statutory exception. In that open state, it was no longer a penknife. At the point [Bacon] withdrew the knife, it carried all the dangerous

propensities that the weapons listed in Art. 27, § 36(a) have in common.

*Bacon v. State,* 82 Md.App. at 742–743, 573 A.2d 114. The court's reasoning was not perficient. To paraphrase Gertrude Stein, "A penknife is a penknife is a penknife is a penknife." [6] The only qualification of "penknife" in the statute is that it be without switchblade.[7] On the face of the statute, there is no indication contradicting the view that a penknife is a penknife whether small or large, whether the blade is closed or open, whether the blade is locked open or unlocked, whether it is carried concealed or openly. Its character is not changed by being carried openly with the blade unfolded; its dangerous propensity is merely more easily realized.

As we have seen from the history of the statute, for over a hundred years the Legislature has evinced an intent, despite the exception being before it on several occasions, that wearing or carrying a penknife, concealed or openly, was not criminal, with the sole qualification, in all that time, that the penknife not be a switchblade knife. We call attention to the fact that *Mackall v. State,* 283 Md. 100, 387 A.2d 762, was decided 13 July 1978. The General Assembly has had a dozen opportunities to correct our view of a "penknife" if it believed that our view was contrary to the legislative intent.

> Penal statutes, as a general rule, are strictly construed, *Jones v. State,* 304 Md. 216, 220, 498 A.2d 622 (1985), "by which is meant that courts will not extend the punishment to cases not plainly within the language used," *State v. Archer,* 73 Md. 44, 57, 20 A. 172 (1890).

---

**6.** "A rose is a rose is a rose is a rose." G. Stein, "Sacred Emily." (1913).

**7.** Apparently the Legislature was satisfied that a penknife did not lose its character as a penknife because it contained a switchblade. It spoke in terms of *"penknives* without switchblade." Art. 27, § 36(a) (emphasis added).

*Davis v. State*, 319 Md. 56, 61, 570 A.2d 855 (1990). *See Briggs v. State*, 289 Md. 23, 31–32, 421 A.2d 1369 (1980); *State v. Fabritz*, 276 Md. 416, 422, 348 A.2d 275 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976). The acceptance of the view of the trial court and the Court of Special Appeals and endorsed by the State would offend the firmly established principles of statutory construction which we have recited and applied many times. We cannot deny that the view the State implores us to follow may be desirable and in the public interest. But to reach such an interpretation in the face of the language of the statute, we would have to doff our judicial robes and don a legislative hat. Our function, applying the principles of statutory construction, is to interpret statutes, not to enact them. We cannot read statutes to say what we would prefer them to say; we can only apply them in accord with what they do say.

The short of it is that we are simply without authority to hold that the Legislature intended that a penknife without switchblade is without the exception when it is carried openly with the blade unfolded. The Legislature is, of course, free to say so, if it wishes, but we may not say so under the guise of statutory construction.

## IV

We held in *Mackall* that the weapons exception in § 36(a) was an essential ingredient of the offense proscribed. Therefore, the burden was on the State to show that the buck knife was not a penknife without switchblade. 283 Md. at 111–113. The State failed to meet this burden. The matter of the sufficiency of the evidence is properly before us by reason of the trial judge's denial of Bacon's motion for a judgment of acquittal. *Ennis v. State*, 306 Md. 579, 584–585, 510 A.2d 573 (1986); *Gray v. State*, 254 Md. 385, 387, 255 A.2d 5 (1969), *cert. denied*, 397 U.S. 944, 90 S.Ct. 961, 25 L.Ed.2d 126 (1970). Since we have concluded that the weapon Bacon carried was not proscribed by § 36(a), the evidence was not legally sufficient to support

his conviction under that statute. The judgment must be reversed. *Mackall*, 283 Md. at 111, 387 A.2d 762. Inasmuch as the basis of the reversal is the insufficiency of the evidence, Bacon, for the reasons we set out in *Mackall* at 113–114, 387 A.2d 762, may not be retried on the charge.

■ We conclude with this envoi. Even if the weapon a person carries is within the exception prescribed by § 36(a), the circumstances may be such that he has committed other crimes involving the weapon, such as assault. In other words, the fact that the weapon is excepted by § 36(a) immunizes the person against criminality only with respect to that statute. So, if a person is carrying a handgun, a weapon ordinarily within the concept of dangerous and deadly, a conviction under § 36(a) would not be proper, but the handgun may be the basis for a conviction, for example, under the handgun law, or robbery with a deadly weapon, or the various assault with intent offenses.[8]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO REMAND TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR ENTRY OF A JUDGMENT OF ACQUITTAL;

COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.

Dissenting opinion by CHASANOW, J., in which McAULIFFE, J., joins.

---

8. The indictment returned against Bacon charged him with robbery with a deadly weapon by count 1; assault and battery by counts 2 and 3; and violation of § 36(a) by count 4 (carrying a dangerous weapon openly with intent to injure); and by count 5 (carrying a dangerous weapon concealed).

The case went to the jury on the first and fourth counts. The jury found him not guilty on the first count and guilty on the fourth count. Counts two, three, and five were nol prossed.

**152**

CHASANOW, Judge, in which McAULIFFE, Judge, joins.

I concur with the majority opinion parts I, II, and III(A), but respectfully dissent from parts III(B) and IV. The majority states that to hold that this buck knife with the blade open, locked and carried openly with intent to injure should be punishable under Maryland Code (1957, 1987 Repl.Vol.), Article 27, § 36 "may be desirable and in the public interest," majority op. at 11, but then declines to so hold.

To suggest that we may draw no distinction between a "penknife" folded closed and a "penknife" with the blade locked in the open position is to suggest that we may draw no distinction between being attacked by a knife wielding assailant whose penknife blade is folded closed and a knife wielding assailant whose penknife blade is locked in the open position. The blade on this buck knife is described as from four to six inches long and folding into the handle, and thus locked open, the knife is from eight to twelve or more inches long. Closed it most resembles and should be treated as a penknife, but open with the blade locked into place it most resembles and should be treated as a dirk knife, which is defined as "a short, straight dagger," *Webster's New Universal Unabridged Dictionary* 517 (2d ed. 1983), or like any other fixed blade stiletto or dagger.

The legislative purpose to treat an open locked knife as a weapon different from a folded knife may also be found in the prohibition against carrying a switchblade knife either concealed or openly with intent to injure. The only difference between a penknife without a switchblade and a penknife with a switchblade is that the latter is instantly ready to spring into the open locked position by the touch of a button. The weapon in the instant case is already in the open locked position. Clearly, in the open locked position it is even more lethal than a penknife with a switchblade. *See Savoy v. State*, 236 Md. 36, 202 A.2d 324 (1964), where this Court held that a "gravity knife" with a blade that could be

locked into place with a flick of the wrist could constitute a dangerous or deadly weapon.

The majority acknowledges that it may be desirable and in the public interest to construe the section 36 penknife exemption as inapplicable to a folding knife once the blade is locked into the open position and the weapon is carried openly with the intent to injure. Since this construction would not be inconsistent with the language of the statute, we should assume that the Legislature intended this desirable result. " 'The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose.' " *Wynn v. State,* 313 Md. 533, 540, 546 A.2d 465, 468 (1988) (quoting *United States v. Brown,* 333 U.S. 18, 25, 68 S.Ct. 376, 380, 92 L.Ed. 442, 448 (1948)). As Chief Judge Murphy observed in *State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275, 279 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976),

"it is the intention of the Legislature that governs in the construction of all statutes so that penal statutes, like other statutes, are to be fairly and reasonably construed and courts should not, by narrow and strained construction, exclude from their operation cases plainly within their scope and meaning. In the final analysis, in construing any statute requiring construction, courts must consider not only the literal or usual meaning of words, but their meaning and effect in light of the setting, the objectives and purposes of the enactment, with the real intention prevailing over the literal intention even though such a construction may seem to be contrary to the letter of the statute."

It seems to me that the most logical construction of the concealed weapon statute, Art. 27, § 36, is that a buck knife in the closed position most resembles and should be treated as a penknife. A buck knife in the open locked position most resembles and should be treated as a dirk knife or other dagger. Under this construction, a buck knife may lawfully be carried concealed in the closed position, and it may lawfully be carried openly either in the closed or open

locked position as long as it is not carried openly with intent to injure. An open locked buck knife, like a dirk knife, dagger, etc., may not be carried openly with intent to injure another person in an unlawful manner.

It seems not only desirable and in the public interest, but it also seems reasonable to assume that the Legislature intended that this approximately ten inch long lethal weapon loses its "penknife" protection when the blade is locked into the open position and it is carried openly with the intent to injure another person in an unlawful manner.

For these reasons, I would affirm the Judgment of the Court of Special Appeals. Judge McAuliffe has authorized me to state that he joins in this dissenting opinion.