# UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CRISPIN SORRELL,

*Plaintiff-Appellee,*

v.

MICHAEL F. MCGUIGAN, PFC,

*Defendant-Appellant,*

and

CHARLES COUNTY SHERIFF'S
DEPARTMENT; FRED DAVID, Charles
County Sheriff's Department,
CHARLES COUNTY,

*Defendants.*

No. 01-1565

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-99-1347-L, CA-99-1921-L)

Argued: June 4, 2002

Decided: June 28, 2002

Before NIEMEYER, MICHAEL, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Kevin Bock Karpinski, ALLEN, JOHNSON, ALEXAN-
DER & KARP, Baltimore, Maryland, for Appellant. Eugene John

Yannon, Annapolis, Maryland, for Appellee. **ON BRIEF:** Victoria M. Shearer, ALLEN, JOHNSON, ALEXANDER & KARP, Baltimore, Maryland, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Crispin Sorrell sued Sergeant Michael F. McGuigan of the Charles County, Maryland, Sheriff's Department, claiming among other things that McGuigan was liable under 42 U.S.C. § 1983 for illegally arresting him for carrying a folding knife with a three-inch blade. In summary judgment proceedings, the district court concluded that McGuigan arrested Sorrell without probable cause. The court also concluded that McGuigan was not entitled to qualified immunity because it was clearly established at the time of Sorrell's arrest that his knife fit within the penknife exception to Maryland's concealed weapons law. McGuigan appeals the denial of qualified immunity, and we affirm.

I.

The relevant facts are not in dispute. On May 13, 1996, David McLain, manager of Boater's World in the Festival Shopping Mall in Waldorf, Maryland, reported a theft at his store to the Charles County Sheriff's Department. McLain described the thieves as four black men in their twenties, one taller than the others, wearing baggy clothes. McLain also described the car they used, including a partial license plate number. The information was broadcast over the police radio. A police officer soon spotted a car matching the radioed description in the parking lot of the nearby St. Charles Towne Center Mall. The officer saw four black males leave the area of the car and enter the mall. They too matched the radioed description. The officer called for

help, and several officers, including Sergeant McGuigan, a six-year veteran with the Charles County Sheriff's Department, approached the four young men. One of the young men was Crispin Sorrell, who was in an Aeropostale shop paying for a couple of shirts when he and his three friends were asked to step outside. The four were lined up, patted down, and detained until McLain arrived from Boater's World and told the officers that Sorrell and his friends were not the thieves.

During the patdown, Sorrell had been found with a three-inch folding knife in his pocket. After it was determined that Sorrell was not implicated in the Boater's World theft, McGuigan arrested Sorrell for carrying a concealed deadly weapon in violation of Md. Ann. Code art. 27 § 36 (1996). Section 36(a) provides that "Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person . . . shall be guilty of a misdemeanor." Sorrell's knife has since been lost, but the parties agree that it (i) had a three-inch blade, (ii) was folded, and (iii) was not a switchblade. The charges against Sorrell were eventually dropped.

On May 11, 1999, Sorrell filed two lawsuits, one in the Circuit Court for Prince George's County and one in the United States District Court for the District of Maryland, alleging violations of 42 U.S.C. § 1983, the Maryland Declaration of Rights, and several state tort laws. Sorrell's § 1983 claims alleged that McGuigan violated his Fourth Amendment rights by stopping him without reasonable suspicion, frisking him without reasonable belief that he was armed and dangerous, and arresting him without probable cause. The state court case was removed, and the district court consolidated the two cases on August 10, 1999. Both sides filed motions for summary judgment. On March 28, 2000, the district court held that McGuigan was not entitled to qualified immunity with respect to Sorrell's § 1983 claim of illegal arrest. McGuigan appeals this ruling pursuant to *Mitchell v. Forsyth*, 472 U.S. 511 (1985), which allows a defendant to take an interlocutory appeal on a qualified immunity ruling involving only issues of law.

## II.

Public officials performing their duties are shielded from liability so long as their conduct does not breach "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, police officers are entitled to qualified immunity unless "(1) the officers' conduct violates a federal statutory or constitutional right, and (2) the right was clearly established at the time of the conduct, such that (3) an objectively reasonable officer would have understood that the conduct violated that right." *Knussman v. Maryland*, 272 F.3d 625, 633 (4th Cir. 2001) (internal quotations and citations omitted).

The first step in deciding whether McGuigan is entitled to qualified immunity is to determine whether Sorrell has alleged a violation of a federal statutory or constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001). Sorrell alleges that because his knife fell within the penknife exception to Maryland's concealed weapons statute, McGuigan did not have probable cause to arrest him. McGuigan now concedes that Sorrell's knife was not illegal. Therefore, McGuigan violated the Fourth Amendment by arresting Sorrell without probable cause to believe he had committed a crime.

The next step in the qualified immunity analysis is to determine whether the right at issue was clearly established at the time of the violation. *Saucier*, 533 U.S. at 201; *Trulock*, 275 F.3d at 400. The focus is on "the right [not] at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (internal quotations omitted). *See also Knussman*, 272 F.3d at 638 (internal quotations omitted) ("[O]ur analysis of whether the constitutional right at issue was clearly established must proceed at a high level of particularity."). In other words, the critical question is whether it was clearly established that Sorrell's knife was legal and consequently could not provide probable cause for Sorrel's arrest. Sergeant McGuigan argues that Maryland law never clearly defines "penknife." As a result, McGuigan says that a reasonable officer interpreting the penknife exception must rely on the common understanding of a penknife

as a small pocketknife and that Sorrell's knife was arguably not a small pocketknife.

McGuigan is wrong. While the concealed weapons statute does not define "penknife," the highest court in Maryland defined it back in 1978. In *Mackall v. State*, 387 A.2d 762 (Md. 1978), the Maryland Court of Appeals examined Md. Ann. Code art. 27 § 36 in some detail. The court first paraphrased § 36(a):

> The following articles, even though dangerous and deadly weapons, are not within the ambit of the statute: (a) penknives without switchblades; (b) handguns.

*Id.* at 766. The *Mackall* court then discussed the definition of penknife:

> "Penknife" is not defined in the statute. Even if the General Assembly had the dictionary definition in mind when it first enacted the statute in 1886, this concept of a "penknife" had obviously changed when the exception was amended to "penknife without switchblade." *Penknives today are commonly considered to encompass any knife with the blade folding into the handle, some very large.*

*Id.* at 769 n.13 (emphasis added). In short, the Maryland Court of Appeals clearly defined penknife as any knife whose blade folds into the handle. It is undisputed that the blade of Sorrell's knife folded into the handle and that it was not a switchblade. As *Mackall* made clear, carrying such a knife is not prohibited by the concealed weapons statute, even if it is deadly and even if it is large.

Two later cases adopt *Mackall*'s definition of penknife and further clarify Maryland law. *In re Daryl L.*, 511 A.2d 1108 (Md. Ct. Spec. App. 1985), quotes directly from *Mackall*: "*Mackall* also instructs that '[p]enknives today are commonly considered to encompass *any knife with the blade folding into the handle, some very large*.'" *Id.* at 1109-10 (emphasis in the original). At issue in *In re Daryl L.* was whether a folding knife without a switchblade but with a locking device fell within the exception for "penknife without switchblade" in Md. Ann.

Code art. 27 § 36(a). The 8-inch knife had a blade that was 3 3/4-inches long and between 3/4- and 1-inch wide, with the blade tapering to a narrow point. The *In re Daryl L.* court never questioned that a folding knife without a locking device was a penknife. As far as the court was concerned, the only issue was whether the locking device disqualified the knife from the statute's exception by making it like a switchblade. The court held that the knife was not like a switchblade and was therefore legal.

In *Bacon v. State*, 586 A.2d 18 (Md. 1991), the Court of Appeals addressed the question of whether a folding knife that was unfolded and locked was illegal under Md. Ann. Code art. 27 § 36(a). The court started its analysis by defining both penknives and switchblades. Like the *In re Daryl L.* court, the *Bacon* court quotes *Mackall*'s definition of a penknife. Holding that the open and locked knife was not banned by the concealed weapons statute, the court wrote:

> On the face of the statute, there is no indication contradicting the view that a penknife is a penknife whether small or large, whether the blade is closed or open, whether the blade is locked open or unlocked, whether it is carried concealed or openly. Its character is not changed by being carried openly with the blade unfolded; its dangerous propensity is merely more easily realized.

> . . . We call attention to the fact that *Mackall v. State*, 283 Md. 100, 387 A.2d 762, was decided 13 July 1978. The General Assembly has had a dozen opportunities to correct our view of a "penknife" if it believed that our view was contrary to the legislative intent.

*Bacon*, 586 A.2d at 22-23. The knife in *Bacon* had a five-inch blade. *Id.* at 20.

To sum up, the highest court in Maryland has more than once defined "penknife" as "any knife with the blade folding into the handle, some very large." Maryland cases also establish the legality of a folding knife with a 3 3/4-inch blade and a locking device as well as the legality of an unfolded and locked folding knife with a five-inch blade. Consequently, it is clearly established that Sorrell's knife, a

folding knife with a folded three-inch blade, is a legal "penknife without switchblade."

McGuigan suggests that a reasonable police officer would not necessarily know specific Maryland cases on penknives. However, a reasonable officer is presumed to know clearly established law. *See Harlow*, 457 U.S. at 818-19 ("[A] reasonably competent public official should know the law governing his conduct.").

Qualified immunity protects law enforcement officers from bad guesses in gray areas. *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). Because the legality of Sorrell's penknife was clearly established, Sergeant McGuigan was not in a gray area. Accordingly, we affirm the district court's order denying him qualified immunity.

*AFFIRMED*